# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1912
_____

Cornell McKay

*Plaintiff - Appellant*

v.

City of St. Louis

*Defendant - Appellee*

Jennifer Joyce

*Defendant*

Anthony Boettigheimer, in his individual and official capacities; Christian Stamper, in his individual and official capacities; David Rudolph, in his individual and official capacities; Richard Gray; Thomas Irwin; Bettye Battle-Turner; Erwin O. Switzer, in their official capacities as members of the St. Louis City Board of Police Commissioners; Francis G. Slay, in his official capacity as an ex-officio member of the St. Louis City Board of Police Commissioners; Joseph Spence, in his individual capacity

*Defendants - Appellees*

Susan Ryan; SC Ryan Consulting, LLC

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 15, 2020
Filed: June 4, 2020
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Cornell McKay appeals the district court's[1] grant of summary judgment in favor of police officers Anthony Boettigheimer, Christian Stamper, and David Rudolph ("the Police Defendants"); probation officer Joseph Spence; various members of the St. Louis City Board of Police Commissioners ("the Board Defendants"); and the City of St. Louis ("City"). We affirm.

## I.

On August 10, 2012, Jane Doe was leaving her car outside her condominium in St. Louis when a man walked "right up" to her at arm's distance, pointed a gun at her, and demanded her money. The man took fifty dollars and Doe's cell phone.

Doe reported the robbery to the St. Louis Metropolitan Police Department that same night. She described the suspect to the police as a young, black male with a light complexion, sixteen to twenty years of age, six feet and three inches tall, and weighing 150 pounds. After the robbery, Doe left her stolen phone activated for the purpose of developing potential leads. She later provided detectives with a spreadsheet she had constructed of calls made to and from her cell phone from August 10 to August 13, using her account records from Sprint. Police conducted an online search of the telephone numbers on Doe's spreadsheets. One of the numbers was linked to addresses associated with a man named Lamont Carter.

---

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

-2-

On August 18, 2012, a man shot and killed Megan Boken during an attempted armed robbery less than three blocks from Doe's condominium. A day later, homicide unit detectives assigned to the Boken case were alerted to the similar location of the Doe and Boken robberies. The homicide detectives then met with Officer Stamper and asked for information about the Doe robbery. A day after this meeting, Officer Stamper assigned the Doe case to Officer Boettigheimer, whose partner, Officer Rudolph, also assisted in the case. Officer Boettigheimer focused his investigation on Carter, conducting searches on computerized databases of phone numbers and addresses associated with Carter to identify Carter's potential associates. Through this process, he found fifteen to twenty individuals linked to Carter, but only Cornell McKay matched Doe's description of her robber.

Officer Boettigheimer generated a photograph lineup using the images of McKay and five others with the same physical characteristics as McKay. He then showed this lineup to Doe, who identified McKay as the man who robbed her. As a result, Officer Boettigheimer issued a "wanted" notice for McKay, who surrendered himself. Officer Boettigheimer then organized a physical lineup consisting of McKay and three others with similar physical characteristics to McKay. Doe again identified McKay as the robber. A grand jury subsequently charged McKay with one count of first-degree armed robbery, *see* Mo. Rev. Stat. § 570.023, and one count of armed criminal action, *see* Mo. Rev. Stat. § 571.015.

Meanwhile, detectives from the homicide unit had been running separate computer searches based on Doe's cell phone spreadsheet. These searches led them to Kaylin Perry, whose number had been called in the days after Doe's robbery. On August 22 and 23, 2012, they interviewed Perry multiple times and informed Officers Boettigheimer and Rudolph they were doing so. During the homicide detectives' interviews of Perry, she ultimately told them that her boyfriend, Keith Esters, had come home one night with Doe's phone and fifty dollars. She stated that she believed Esters robbed someone for the phone and the money.

When Officers Boettigheimer and Rudolph interviewed Perry, however, she told them only that Esters had given her Doe's cell phone to use sometime during the week of August 13, 2012, after her cell phone had stopped working. She also told the officers that she did not know where or how Esters obtained Doe's cell phone and that she and Esters had since sold the cell phone at a gas station. Officer Rudolph later testified that he was not told of Perry's statement to the homicide detectives that she believed Esters committed the Doe robbery. And Officer Boettigheimer also testified that the homicide detectives did not tell him the specific information they received during their interviews with Perry.

Officers Boettigheimer and Rudolph tracked down the person who had purchased the phone at the gas station, and that person confirmed that he had bought the phone from Esters. In February 2013, Doe was shown a photographic lineup that included Esters, but she did not identify him as the robber. Esters later confessed to the Boken murder but repeatedly denied involvement in the Doe robbery.

In December 2013, during McKay's trial, Doe again identified McKay as the man who robbed her. A jury convicted McKay of both the armed-robbery and armed-criminal-action counts. *State v. McKay*, 459 S.W.3d 450, 452 (Mo. Ct. App. 2014). The court sentenced him to 12 years' imprisonment. *Id.* The Missouri Court of Appeals reversed the convictions on the ground that the trial court erred by granting the prosecution's motion to exclude any reference to Esters and remanded the case for a new trial. *Id.* at 459-60. Because Doe did not want to testify at another trial, the State declined to retry the case, and McKay was released in May 2015.

McKay filed suit against the Police Defendants, Spence (his former probation officer), the Board Defendants, and the City (collectively, "the Appellees"), among others. He asserted claims under 42 U.S.C. § 1983 against the Police Defendants (in their individual and official capacities) for violating his constitutional rights by (1) suppressing and/or destroying evidence; against the Police Defendants (in their

individual and official capacities) and Spence[2] (in his individual capacity) for violating his constitutional rights by (2) fabricating evidence, (3) failing to investigate, and (4) conspiring to deprive him of his constitutional rights; and against the Board Defendants (in their official capacities) and the City for (5) imposing certain policies, customs, or practices in violation of his constitutional rights.

The district court granted summary judgment for the Appellees. McKay appeals the grant of summary judgment on all five claims.

## II.

A § 1983 claim requires "(1) that the defendant(s) acted under color of state law[] and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). We review *de novo* the district court's grant of summary judgment on a § 1983 claim. *LaCross v. City of Duluth*, 713 F.3d 1155, 1157 (8th Cir. 2013). We also review *de novo* a grant of summary judgment on a municipal liability claim under § 1983. *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009). A motion for summary judgment is properly granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2]McKay argued before the district court that his probation officer, Spence, filed a fabricated probation revocation report that falsely stated that a photograph of McKay appeared on Doe's phone. On appeal, McKay mentions Spence only once, when describing the claims he brought in the district court. He also includes only one passing sentence obliquely referencing the probation revocation report. "Since there was no meaningful argument on this claim in his opening brief, it is waived." *Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004).

A.

McKay first argues that the Police Defendants violated his due process rights by suppressing or destroying evidence. Suppression of material exculpatory evidence is a violation of a person's due process rights. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To demonstrate a *Brady* violation, a plaintiff must show that (1) the prosecution suppressed evidence (2) that was favorable to the defendant and (3) that the evidence was material. *Stewart v. Wagner*, 836 F.3d 978, 982 (8th Cir. 2016). To establish a claim under § 1983 for a *Brady* violation, a plaintiff must allege and demonstrate bad faith or, in other words, that "a law enforcement officer other than the prosecutor intended to deprive [him] of a fair trial." *See id.* at 982 (emphasis omitted).

McKay asserts that the Police Defendants: (1) failed to preserve Doe's phone in such a way that evidence could be gathered from it; (2) "suppressed the true nature" of Perry's statements by making it appear that the Police Defendants did not know that Perry had implicated Esters in the Doe robbery; and (3) lost or destroyed an alleged video of the interview that Officers Boettigheimer and Rudolph conducted with Perry. He implies that the Police Defendants must have been acting in bad faith by suppressing or destroying evidence in order to "cover up their shocking negligence in failing to investigate the Jane Doe robbery before Megan Boken's murder."

The district court correctly granted summary judgment to the Police Defendants on this § 1983 *Brady* claim.

First, McKay concedes there is no evidence that Doe's phone was intentionally destroyed, let alone destroyed in bad faith by or on behalf of the Police Defendants. "Bad faith can be shown by proof of an official animus or a conscious effort to" destroy exculpatory evidence. *See Jimerson v. Payne*, --- F.3d ---, 2020 WL 2050657, at *6 (8th Cir. Apr. 29, 2020). McKay states only that the phone is "now destroyed and no one can provide any explanation as to how or when the phone

was destroyed." Without some indication of bad faith or that the phone contained exculpatory evidence, McKay's *Brady* claim regarding the destruction of Doe's phone necessarily fails. *See United States v. Leisure*, 844 F.2d 1347, 1361 (8th Cir. 1988) (declining to infer bad faith from the "sole circumstance of destruction" of evidence).

Second, McKay asserts that the Police Defendants failed to disclose to McKay that Perry had made statements implicating Esters in the Doe robbery. Although it is unclear from McKay's brief which specific statements he alleges were suppressed, McKay proffers no evidence that the Police Defendants were ever told about Perry's statement to the homicide detectives that she believed Esters committed the Doe robbery. Regarding other statements made by Perry, McKay admitted that his counsel was given "[t]wo DVDs . . . of statements given by Kaylin [P]erry." As the district court noted, McKay was given these statements by March 2013, more than eight months before his trial. Thus, the record does not provide any support for the claim that the Police Defendants suppressed Perry's statements, let alone suppressed them in bad faith.

Third, McKay asserts that a video of an interview of Perry by Officers Boettigheimer and Rudolph conducted in the homicide unit was either suppressed or destroyed. Although Officer Rudolph testified as to his "understanding" that every interview in the homicide unit is automatically recorded, McKay proffers no other evidence that a video of this particular interview existed, let alone that it was destroyed or suppressed in bad faith. In addition, we agree with the district court that testimony of a robbery detective like Officer Rudolph about video-recording protocol in the homicide unit is not particularly persuasive without additional evidence that Officer Rudolph had past experience or special knowledge of that unit's video-recording protocol. Because McKay does not offer evidence that such a video ever existed beyond conjecture and speculation, let alone any evidence that it was suppressed or destroyed in bad faith, McKay's claim on this point cannot survive summary judgment. *See Helmig v. Fowler*, 828 F.3d 755, 762 (8th Cir. 2016) (stating that, "[w]ithout any evidence of intent or bad faith," a § 1983 claim

based on a *Brady* violation must fail); *see also Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 720 (8th Cir. 2019) (noting that "a party must provide more than conjecture and speculation" to survive a summary judgment motion).

For these reasons, McKay has failed to establish a genuine dispute of material fact about whether the Police Defendants violated McKay's "constitutionally protected federal right[s]," *see Schmidt*, 557 F.3d at 571, by suppressing or destroying evidence in bad faith. Thus, the district court did not err in granting summary judgment to the Police Defendants on this claim. *See id.* at 574 (affirming summary judgment on § 1983 claim without addressing "issues of qualified immunity" by finding "no constitutional violation").

B.

McKay next argues that the district court erred in granting summary judgment to the Police Defendants on his claim that they fabricated evidence in violation of his due process rights. Specifically, he asserts that the Police Defendants improperly persuaded Doe to choose McKay's image in a photograph lineup and excluded the statements made by Perry to the homicide detectives from a police report. "If officers use false evidence, including false testimony, to secure a conviction, the defendant's due process is violated." *Wilson v. Lawrence Cty.*, 260 F.3d 946, 954 (8th Cir. 2001). We have recognized that a plaintiff can demonstrate a violation of substantive due process by "offer[ing] evidence of a purposeful police conspiracy to manufacture, and the manufacture of, false evidence." *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (en banc) (*abrogated on other grounds by Manuel v. City of Joliet*, 580 U.S. ---, 137 S. Ct. 911 (2017)).

A lineup that deprives the accused of a fair trial offends due process and can be actionable under § 1983. *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000). To determine whether an identification procedure violated due process, we consider: (1) whether the identification was impermissibly suggestive; and (2) whether, under the totality of the circumstances, the suggestive procedures created

-8-

"a very substantial likelihood of irreparable misidentification." *United States v. Murdock*, 928 F.2d 293, 297 (8th Cir. 1991).

All McKay offers to support his claim that the Police Defendants improperly coached Doe is McKay's assertion that he was not the robber, and therefore Doe's unprompted identification of him is "implausible." But no evidence supports this speculative argument. To the contrary, Doe consistently identified McKay as the man who robbed her, first in a photograph lineup and later in an in-person lineup, and she articulated differences between Esters's features and those of the man who robbed her. Moreover, Doe testified that she had a "good look" at the man who robbed her on the night of the incident and that that person was McKay. Because McKay's claim of witness coaching is mere supposition, we agree with the district court that this claim cannot survive summary judgment. *See Zayed*, 913 F.3d at 720.

McKay also argues cursorily that the Police Defendants fabricated a police report by refusing to include Perry's statement that she believed Esters had committed the robbery. But, as we noted above, McKay fails to proffer any evidence that the Police Defendants were told of such a statement by the homicide unit detectives. Therefore, this claim must also fail because McKay's argument is speculation. *See Zayed*, 913 F.3d at 720.

Because the record evidence does not create a genuine dispute of material fact regarding McKay's fabrication-of-evidence claims, the district court did not err in granting summary judgment to the Police Defendants.

C.

McKay also argues that the Police Defendants violated his constitutional rights by recklessly or intentionally failing to investigate Esters as a suspect in the Doe robbery. We have recognized that a constitutional violation occurs when officers' "failure to investigate was intentional or reckless, thereby shocking the conscience." *Cooper v. Martin*, 634 F.3d 477, 481 (8th Cir. 2011); *see also Amrine*

*v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) ("The test for whether state officers' actions violate this protected liberty interest is whether those actions shock the conscience."). Allegations of negligence, even of "gross negligence," do not give rise to a constitutional violation. *Amrine*, 522 F.3d at 833, 835 (noting that officers' failure to "follow through on investigating other leads" did not rise to the level of recklessness).

McKay's assertion that the Police Defendants failed to "even consider" Esters as a suspect in the Doe robbery is contradicted by the record. After learning of Esters, Officers Boettigheimer and Rudolph interviewed Perry about Esters's connection to Doe's phone and then included Esters's photograph in a lineup for Doe to identify. During this photographic lineup, Doe pointed out physical differences between Esters and her attacker, like Esters's "too thick" eyebrows and "too dark" skin tone. Moreover, Doe consistently identified McKay as the robber, and Esters admitted to the Boken murder but repeatedly denied any involvement in the Doe robbery. Considering this evidence, we agree with the district court that the Police Defendants did not fail to investigate, let alone fail to do so in a reckless or intentional manner so as to "shock the conscience." *See id.* at 833. Thus, the district court did not err in granting summary judgment to the Police Defendants on this claim.

D.

McKay next argues that the Police Defendants engaged in a conspiracy to deprive him of his constitutional rights. To prove a § 1983 conspiracy claim, McKay must demonstrate that the defendants "(1) conspired with others to deprive him . . . of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured" him. *See Helmig*, 828 F.3d at 763. McKay "is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *See White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008).

For the reasons stated above, we agree with the district court that the Police Defendants are entitled to summary judgment on McKay's conspiracy claim because McKay has failed to create a genuine dispute of material fact concerning whether he was deprived of a constitutional right. *See Robbins v. Becker*, 794 F.3d 988, 997 (8th Cir. 2015) ("Absent a constitutional violation, there is no actionable conspiracy claim." (internal quotation marks omitted)).

E.

Lastly, McKay argues that the district court erred in granting summary judgment to the Board Defendants in their official capacities and to the City of St. Louis on his municipal liability claim. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). "Under *Monell*, section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from . . . an official municipal policy." *Whitney v. City of St. Louis*, 887 F.3d 857, 860 (8th Cir. 2018) (brackets and internal quotation marks omitted); *see generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Therefore, "absent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City." *Whitney*, 887 F.3d at 861.

As summary judgment was proper on McKay's claims against the Police Defendants because they did not violate his constitutional rights, his *Monell* claim against the City and Board Defendants in their official capacities also fails. *See Keefe v. City of Minneapolis*, 785 F.3d 1216, 1227 (8th Cir. 2015). Therefore, the district court did not err in granting summary judgment on his *Monell* claim.

**III.**

For the foregoing reasons, we affirm.

_____

-11-

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

June 04, 2020

Ms. Brandy B. Barth
NEWTON & BARTH
Suite 420
555 Washington Avenue
Saint Louis, MO  63101

      RE:  19-1912  Cornell McKay v. City of St. Louis, et al

Dear Counsel:

      The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

      Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

      Michael E. Gans
      Clerk of Court

CMD

Enclosure(s)

cc:    Mr. James R. Dowd Jr.
        Mr. J. Brent Dulle
        Mr. Robert J Isaacson
        Mr. Gregory J. Linhares
        Ms. Melanie Pennycuff
        Ms. Laura M. Robb
        Ms. Deborah Bell Yates

      District Court/Agency Case Number(s):   4:15-cv-01315-JAR

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

June 04, 2020

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

     RE: 19-1912  Cornell McKay v. City of St. Louis, et al

Dear Sirs:

     A published opinion was filed today in the above case.

     Counsel who presented argument on behalf of the appellant was Brandy B. Barth, of Saint Louis, MO.

     Counsel who presented argument on behalf of the appellee City of St. Louis was J. Brent Dulle, Associate City Counselor, Saint Louis, MO. Melanie Pennycuff, AAG, of Saint Louis, MO argued on behalf of appellees Boettigheimer, Stamper, Rudolph, Gray, Irwin, Battle-Turner, Switzer and Slay.  On the brief of Boettigheimer, et al., was Laura M. Robb, AAG, St. Louis, MO. The following attorney(s) appeared on the appellee brief of Joseph Spence:  Deborah Bell Yates, AAG, of Saint Louis, MO.

     The judge who heard the case in the district court was Honorable John A. Ross. The judgment of the district court was entered on March 31, 2019.

     If you have any questions concerning this case, please call this office.

                            Michael E. Gans
                            Clerk of Court

CMD

Enclosure(s)

cc:  MO Lawyers Weekly

     District Court/Agency Case Number(s):  4:15-cv-01315-JAR